UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

DENNIS JIMENEZ, BARBRA MARTINEZ,
EDMUND SKINNER, individually and
on behalf of all persons similarly situated,

Plaintiffs,

   -against-                                **COMPLAINT**

CAMBA, INC. and CHV 560 WINTHROP STREET LP,

Defendants.

----------------------------------------------------------------x

<u>**PRELIMINARY STATEMENT**</u>

1.     Plaintiffs are disabled residents of supportive housing facilities run by CAMBA, Inc. and/or one of its affiliates through CAMBA Housing Ventures (CHV) (hereinafter "Defendants" or "CAMBA"). CAMBA, despite being a provider of supportive housing, engages in a pattern and practice of failing to make accommodations necessary for its residents to retain and enjoy their housing. By discriminating in this way against its residents on the basis of their disability, CAMBA is placing at risk of homelessness those very persons whom CAMBA purports to protect.

2.     All of the Plaintiffs are at risk of eviction and have disabilities that impair their capacity to defend themselves against eviction in New York City Housing Court. This action challenges the failure of CAMBA to accommodate the needs of tenants and occupants with disabilities, and CAMBA's failure to make reasonable modifications to its policies and practices which currently result in unlawful discrimination against its residents on the basis of their disabilities.

1

3.      CAMBA fails to accommodate those residents who are facing eviction at every stage of the eviction process. Before commencing eviction proceedings, CAMBA fails to provide appropriate supportive housing services that would ensure that commencing an eviction case in Housing Court was the last resort. At the eviction stage, CAMBA fails to alert the Housing Court of its status as a not-for-profit supportive housing provider funded to serve the mentally disabled. CAMBA also readily takes default judgments against CAMBA tenants who do not file answers or appear on a scheduled court date. It does so with full knowledge that the defaulting tenant suffers from disabilities, and without alerting the court to the tenant's likely inability to defend themselves in the proceeding. CAMBA fails to assist those tenants who do appear in court in applying for readily available social services grants that would fully pay their arrears and prevent their evictions.

4.      Defendants' conduct violates the Fair Housing Act, the New York State Human Rights Law and the New York City Human Rights Law. Plaintiffs seek a declaration that by failing to provide disabled tenants adequate supportive housing services that would assist tenants in avoiding an eviction case in Housing Court, and by failing to advise the court that its tenants are disabled and may not be able to defend themselves in their eviction proceedings, CAMBA is unlawfully failing to reasonably accommodate Plaintiffs' disabilities. Plaintiffs further seek an injunction directing Defendants to provide Plaintiffs and the Plaintiff class with the accommodations mandated by law.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 for civil actions arising under the laws of the United States; 28 U.S.C. § 1343 for actions arising under laws providing for the protection of civil rights. Plaintiffs' state law claims are pled pursuant to

28 U.S.C. § 1367 because Plaintiffs' federal and state law claims are related and arise out of a common nucleus of related facts.

6.      Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act), and injunctive relief pursuant to 42 U.S.C. § 3613(c) (Fair Housing Act), N.Y. Executive Law § 296 and N.Y.C. Administrative Code § 8-502.

7.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because that is the district in which a substantial part of the acts and omissions giving rise to Plaintiffs' claims occurred.

## **PARTIES**

8.      Plaintiff Dennis Jimenez is a mentally and physically disabled man who resides at 560 Winthrop Street, Apt 236, Brooklyn, NY 11203. Mr. Jimenez has been and continues to be adversely affected by the acts, policies and practices of Defendants and/or their agents.

9.      Plaintiff Barbra Martinez is a mentally and physically disabled woman who resides at 494 Georgia Avenue, Apt 4F, Brooklyn, NY 11207. Ms. Martinez has been and continues to be adversely affected by the acts, policies and practices of Defendants and/or their agents.

10.     Plaintiff Edmund Skinner is a mentally and physically disabled man who resides at 494 Georgia Avenue, Apt 3L, Brooklyn, NY 11207. Mr. Skinner has been and continues to be adversely affected by the acts, policies and practices of Defendants and/or their agents.

11.     Defendant CAMBA, Inc. ("CAMBA") is a not-for-profit corporation duly formed under the laws of the State of New York. CAMBA operates housing in its own name and through affiliate or subsidiary corporations and provides supportive social services for persons with disabilities and its facilities qualify as a covered dwelling under 42 U.S.C. §3604(f)(7)(A) of the

Fair Housing Act. CAMBA, Inc. maintains its principal place of business at 1720 Church Avenue, Brooklyn, NY 11226

12.      Defendant CHV 560 Winthrop Street LP is a Domestic Limited Partnership duly formed under the laws of the State of New York. Upon information and belief, Defendant CHV 560 Winthrop Street LP is a subsidiary or affiliate of Defendant CAMBA. It maintains its principal place of business at 221-10 Jamaica Avenue, Queens Village, NY. CHV 560 Winthrop Street LP operates housing and provides supportive social services for persons with disabilities, and its facilities qualify as a covered dwelling under 42 U.S.C. §3604(f)(7)(A) of the Fair Housing Act.

<u>**STATUTORY AND REGULATORY SCHEME**</u>

**<u>The Fair Housing Act</u>**

13.      The Fair Housing Act (hereinafter "FHA") prohibits discrimination in the rental of housing in covered multi-family dwellings. 42 U.S.C. §3604 et seq.

14.      The FHA makes it unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person. 42. U.S.C. §3604(f)(2)(A).

15.      A handicap under the 42 U.S.C. §3602(h) means:

(1)      a physical or mental impairment which substantially limits one or more of such person's major life activities,

(2)      a record of having such an impairment, or

(3)     being regarded as having such an impairment, but such term does not include

current, illegal use of or addiction to a controlled substance (as defined in section 102 of

the Controlled Substances Act (21 U.S.C. 802)).

16.     For purposes of the FHA, discrimination includes a refusal to make reasonable

accommodations in rules, policies, practices, or services, when such accommodations may be

necessary to afford such person equal opportunity to use and enjoy a dwelling. 42 U.S.C.

§3604(f)(3)(b).

17.     Plaintiffs are aggrieved persons as defined in 42 U.S.C. §3602(i), have been

injured by Defendants' discriminatory conduct, and have suffered damages as a result.

18.     Defendants' conduct is unlawful, intentional, willful, and undertaken in disregard

for the rights of others.

19.     Under the FHA, "if the court finds that a discriminatory housing practice has

occurred or is about to occur, the court may award to the Plaintiffs actual and punitive damages,

and … may grant as relief, as the court deems appropriate, any permanent or temporary

injunction, temporary restraining order, or other order (including an order enjoining the

defendant from engaging in such practice or ordering such affirmative action as may be

appropriate)." 42 U.S.C.A. §3613(c)(1). The court may also grant the prevailing party actual and

punitive damages reasonable attorney's fees and costs. 42 U.S.C.A. §3613(c)(1) and (2).

**New York State Human Rights Law**

20.     The New York State Legislature enacted the Human Rights Law to "eliminate and prevent discrimination in…housing accommodations…." N.Y. Executive Law § 290(3).

21.     It shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, or any agent or employee thereof to discriminate against any person because of . . . disability. . . in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith. N.Y. Exec. Law § 296(5)(a)(2).

22.     The term "housing accommodation" includes any building, structure, or portion thereof which is used or occupied or is intended, arranged or designed to be used or occupied, as the home, residence or sleeping place of one or more human beings. N.Y. Exec. Law § 292(10).

23.     The New York State Human Rights Law defines "disability" as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques…." N.Y. Exec. Law § 292(21)

**New York City Human Rights Law**

24.     The City Human Rights Law also makes it an unlawful discriminatory practice "for the owner, lessor, lessee, sublessee, assignee, or managing agent of, or other person having the right to sell, rent or lease or approve the sale, rental or lease of a housing accommodation, constructed or to be constructed, or an interest therein, or any agent or employee thereof … Because of the actual or perceived … disability … of any person or group of persons … To refuse to sell, rent, lease, approve the sale, rental, or lease or otherwise deny to or withhold from any such person or group of persons such a housing accommodation or an interest therein … [or]

6

… To discriminate against any such person or persons in the terms, conditions, or privileges of the sale, rental, or lease of any such housing accommodation or an interest therein or in the furnishing of facilities or services in connection therewith." N.Y.C. Administrative Code § 8-107(5).

25.    The term "housing accommodation" includes any building, structure, or portion thereof which is used or occupied or is intended, arranged or designed to be used or occupied, as the home, residence or sleeping place of one or more human beings. N.Y.C. Administrative Code § 8-102.

26.    The New York City Human Rights Law defines "disability" as "any physical, medical, mental, or psychological impairment." N.Y.C. Administrative Code § 8-102.

## STATEMENT OF FACTS

27.    Defendants CAMBA, Inc. and its affiliates through CAMBA Housing Ventures (CHV) ("CAMBA") are arranged under a not-for-profit corporation duly formed under the laws of the State of New York. CAMBA operates housing and provides supportive social services for persons with disabilities, and its facilities qualify as a covered dwelling under 42 U.S.C. §3604(f)(7)(A) of the Fair Housing Act.

**Defendant CAMBA**

28.    Defendants CAMBA, Inc. and its affiliates through CAMBA Housing Ventures (CHV) ("CAMBA") are arranged or operated under the umbrella of a not-for-profit corporation formed under the laws of the state of New York. CAMBA operates supportive housing for people with mental illnesses, housing for people with HIV/AIDS, and a scattered site supportive housing program. CAMBA's mission and values statement extols its principles which include enhancing quality of life and providing access to resources needed to thrive. CAMBA claims to

7

possess a commitment to being part of the solution to end homelessness by offering services which help residents maintain stable housing and independent lifestyles. According to its website, CAMBA provides supportive services at 40 affordable housing developments serving more than 2,000 tenants each year and serves families with special needs including mental illness, HIV/AIDS, substance use disorders and other chronic and disabling health conditions. https://camba.org/programs/supportive-housing-developments, (last visited October 7, 2025).

29. CAMBA Housing Ventures (CHV) is an affiliate of CAMBA. CHV develops affordable and supportive housing for low-income and formerly homeless individuals and families. CHV projects include:

    a. 97 CROOKE, owned and/or operated by CHV 97 Crooke Avenue L.P.;

    b. THE BRONX GROVE, owned and/or operated by CHV Bedford Park L.P.;

    c. Buckingham House, owned and/or operated by CHV Buckingham HDFC;

    d. CAMBA GARDENS I, owned and/or operated by CHV 690-738 Albany Avenue, L.P.;

    e. CAMBA GARDENS II, owned and/or operated by CHV 560 Winthrop Street L.P.;

    f. THE HEGEMAN, owned and/or operated by 210-214 Hegeman Ave., L.P.;

    g. MORRIS MANOR, owned and/or operated by CHV-1247 Flatbush L.P.;

    h. VAN DYKE AND VAN DYKE III, owned and/or operated by CHV 603 Mother Gaston Blvd. L.P.

30. Additionally, CAMBA Inc., provides individuals and families living with a serious mental illness supportive housing in scattered site apartments.

31.     In CAMBA's regular course of business, CAMBA violates Federal and State law and discriminates against the very people it professes to protect by failing to provide reasonable accommodations to enable its residents an equal opportunity to use and enjoy their housing accommodations.

32.     CAMBA is on notice of every resident's mental health and physical disability upon their admittance into CAMBA's housing. Yet, prior to commencing eviction proceedings in Housing Court, CAMBA fails to provide its residents with reasonable accommodations before subjecting them to the immediate uncertainties and stress of Housing Court and an imminent risk of homelessness.

33.     CAMBA fails to assist the residents who have fallen into rent arrears with simple case management advocacy to resolve their arrears and instead subjects its residents to imminent danger of homelessness by bringing unnecessary nonpayment eviction proceedings against them.

34.     New York City's Human Resources Administration ("HRA") provides grants to pay rent arrears for low-income tenants under the Emergency Assistance for Adults (EAA) and Emergency Safety Net (ESNA) programs. These grants are colloquially referred to as "one shot deals". To qualify for the programs, tenants must owe rent, be income eligible and in some cases, demonstrate the ability to pay their rent in the future. Many of CAMBA's tenants receive Section 8 benefits and their rents are set at 30 percent of their income. Additionally, CAMBA's buildings receive government funding to assure that they are affordable to low-income tenants. As vulnerable low-income tenants with affordable rents, CAMBA's tenants generally meet the criteria to receive emergency funding from HRA. HRA has tried to make the process easier by creating tools for organizations that provide case management to assist with accessing benefits, including the creation of a "provider portal" through which the program can submit rent arrears

applications on behalf of their tenants. CAMBA's caseworkers could be helping residents apply for one shot deals prior to those residents being hauled into court and put at risk of eviction. Instead, CAMBA's disabled residents are often left on their own to maneuver through bureaucratic obstacles.

35.    Further, once CAMBA subjects its residents to Housing Court, it continues to discriminate against CAMBA residents and deprives them of an equal opportunity to maintain and preserve their housing.

36.    CAMBA fails to notify the Housing Court in its pleadings of the nature of residents' tenancy: that without the supportive services provided by CAMBA, the residents could not live independently.

37.    CAMBA routinely takes default judgments against CAMBA tenants without informing the court of the tenants' disabilities. These very disabilities often contribute to the tenants' nonappearance in court. If CAMBA counsel were to inform the court of the tenants' disabilities, the court would be alerted to the possible need for appointment of a guardian ad litem, and a default judgment and subsequent issuance of a warrant of eviction could be avoided.

38.    Plaintiffs' counsel reviewed all nonpayment proceedings brought by CAMBA Inc. and the CAMBA affiliates listed in paragraph 29.  The survey included nine developments out of the forty developments owned and managed by CAMBA. Between January 1, 2024, and July 31, 2025, CAMBA Inc. and the CAMBA affiliates listed in paragraphs 29 brought one hundred sixty-two (162) nonpayment cases against tenants in these nine buildings. Since CAMBA's pleadings do not inform the court of its tenants' disabled status, it is impossible to know exactly how many of these 162 cases involve tenants with disabilities. However, most of

these tenants have low rent shares consistent with disabilities, and the court records in many cases clearly show that the tenant had a disability that should have been accommodated.

39.     In not one of those cases did CAMBA inform the courts that their residents were people in need of services to remain stably housed. In twelve cases brought by CAMBA Inc., the court was informed that the units were regulated by the NYS Office of Mental Health and Hygiene. In twenty-four cases, CAMBA informed the court that the rents were set based on the project's participation in an affordable and supportive housing program but made no reference to the tenant's possible disability. In one hundred and twenty-six cases, no mention was made of supportive housing or any other regulatory status which would have informed the court of the tenants' disabilities.

40.     CAMBA sought and/or obtained default judgments in fifty cases when the tenant failed to answer or appear in court. These fifty cases can be further divided into two categories: twelve tenants answered the petition and then defaulted, and thirty-eight tenants failed to answer the petition and thereafter, CAMBA sought a warrant of eviction and a default judgment. In New York City's Housing Court, if a tenant fails to answer a nonpayment proceeding, the petitioner may ask the court to enter a judgment and issue a warrant of eviction. Attached to that request is an affidavit from an employee of the petitioner.[1]  In each affidavit, an employee of CAMBA lists the amount of money paid by the tenant after the petition of nonpayment was served. Additionally, the affidavit verifies that a lease is in effect. There is no mention in these affidavits of the supportive housing services provided by CAMBA. Nor do these affidavits inform the

---

[1] Where a tenant answers the petition and thereafter defaults, no affidavit is needed for a judgment to be issued. There is no evidence in the court records that CAMBA's counsel advised the court on the date of such defaults that the tenant was disabled and might need a Guardian ad Litem.

court of the tenants' disabilities and their supportive housing status or advise the court that the tenant may be incapable of defending their rights and may be in need of a guardian.

41.     Of the fifty where Defendants sought and/or obtained a default judgment, the court denied a warrant of eviction in ten cases. In each case, the court determined based on CAMBA's paperwork that a default judgment could not be granted and warrant of eviction could not be issued for reasons other than the tenant's disability.

42.     In the forty cases where a warrant was not denied, warrants have so far been granted in thirty-two cases. In five cases, the warrant requests are still pending.

43.     Out of the thirty-two cases where warrants of eviction were issued, marshals' notices of eviction were served in twenty-six cases.[2]

44.     Of the thirty-two cases where the court issued a warrant of eviction, five tenants have been evicted to date. One of the five, A.S., was restored to possession by the court after paying all arrears and marshal and legal fees. A second tenant, R.W., was likely also restored after all arrears and marshal and legal fees were paid by the City. The history of these two proceedings illustrates the harm caused by CAMBA's failure to provide reasonable accommodations.

45.     A.S. was sued by CHV 690-738 Albany Avenue L.P. on June 7, 2024, in index number LT 317782/24 in the Housing Court of New York, Kings County.

https://iapps.courts.state.ny.us/nyscef/DocumentList?docketId=0MqeEE/OLIxIVESmAQwh8Q==&display=all. The Petition alleged that $1978 was owed in rent and that Ms. S.'s rent was $142. No mention was made that Ms. S. received supportive housing services from Defendant.

---

[2]  In New York State, a warrant of eviction authorizes a marshal to perform an eviction. Before an eviction can be executed in New York City, a marshal must serve a notice of eviction that informs tenants that they can be evicted after fourteen days.

Ms. S failed to answer, and Defendant's counsel applied for an eviction warrant. The supporting affidavit submitted by a CAMBA employee made no mention of Ms. S.'s disability status. Ms. S. was evicted on January 15, 2025, without her winter coat. The Legal Aid Society appeared for Ms. S. on January 17, 2025. The court ordered Ms. S. to be restored to possession based on the City's approval of payment for all the rent arrears and marshal and legal fees, and on Ms. S.'s status as a disabled tenant in supportive housing. The order was made over Defendant's counsel's objection. Plaintiff's counsel discovered in the course of representation that Ms. S.'s rental arrears and her eviction occurred because Defendant had failed to provide Ms. S. with a renewal lease. The lack of renewal lease resulted in the Human Resources Administration stopping payment of Ms. S.'s shelter allowance. But for Defendant's failure to provide Ms. S. with supportive housing services, she would not have owed rent, she would not have been sued in Housing Court and she would not have been evicted in January without a winter coat.

46.    R.W. was sued by CHV 690-738 Albany Avenue L.P. on June 7, 2024, in index number LT 317784/24 in the Housing Court of New York, Kings County. https://iapps.courts.state.ny.us/nyscef/DocumentList?docketId=M/fg_PLUS_AdNIz2zXzjizlZeX Q==&display=all The Petition alleged that $1464 was owed in rent and that Ms. W.'s rent share was $132. No mention was made that Ms. W received supportive housing services. Ms. W. failed to answer, and Defendant's counsel applied for an eviction warrant. Again, Defendant failed to advise the court of Ms. W.'s disabilities. Ms. W. was evicted on October 29, 2024. She submitted an Order to Show Cause seeking a court order to stay reletting of her apartment. Ms. W. wrote in the order "Marshal evicted me today. I did not know about this case. HRA pays my rent, and I notify them of missing. I'm going to room 408 today to look into this."  On October 30, 2024, Judge Golden granted Ms. W.'s motion to the extent of staying Defendant from re-

letting the apartment for payment of $2,256.50 in arrears, plus legal and marshal fees of $1200 plus November's share of $132. The last document in the court's file was an Order to Show Cause, dated November 6, 2024, where Ms. W. wrote "HRA has paid the arrears totaling $3456.50. HRA has paid shelter allowance for November." That OSC was marked withdrawn, and it is unknown whether Ms. W. was restored to possession of her home.

47.    In the other three evictions, each time the pattern was the same. Defendant filed a petition and the tenant failed to answer. The Defendant filed a warrant requisition. The affidavit attached to the warrant requisition failed to inform the court that the tenant was a supportive housing resident and was disabled. The warrant issued, the marshal served the notice of eviction, and the tenant was evicted from their home.

48.    Of the 162 cases reviewed by plaintiffs' counsel, there were only eight cases in which a guardian ad litem was either sought or granted. In only one case was the request for a guardian ad litem made by defendant's counsel. In three cases, the court *sua sponte* appointed a guardian ad litem. In the other four cases, the Department of Social Services brought motions as a friend of the court. In two cases, CAMBA filed papers opposing the motion by the Department of Social Services. In one case, CAMBA argued that the Department of Social Services had no authority to make such a motion and that there was no evidence that the tenant was incapable of defending his rights. In another case, CAMBA filed papers opposing the motion by the Department of Social Services arguing that the default judgment and warrant should not be vacated.

49.    Of the 162 cases reviewed by plaintiffs' counsel, only twenty-three tenants were represented by counsel. Of the tenants who failed to answer or failed to appear, only five tenants

were represented by counsel. Another tenant was referred to counsel, but counsel was unable to make contact and thus could not represent the tenant.[3]

50.    Upon information and belief, all 162 tenants in the cases reviewed by Plaintiff's counsel suffered anxiety and emotional distress due to the nonpayment proceedings needlessly commenced by Defendants in lieu of assisting their tenants obtain rent arrears from the City. Of the 162 cases surveyed by Plaintiffs' counsel, seventy-three have now been discontinued, including four of the five tenants who were evicted from their homes. Eighty-nine cases remain pending. Sixteen of the remaining eighty-nine tenants are either represented by counsel or are or will be protected by guardians ad litem. There are therefore seventy-three *pro se* tenants living in CAMBA supportive housing who are currently at risk of eviction. Twenty-five of these unrepresented tenants currently have judgments or pending warrants of eviction and their risk of eviction is therefore imminent.

**Individual Plaintiff Facts**

Dennis Jimenez

51.    Dennis Jimenez resides at 560 Winthrop Street, Apt 236, Brooklyn, NY 11203. Upon information and belief, 560 Winthrop Street is an apartment developed by CAMBA Housing Ventures through the entity CHV 560 Winthrop Street LP. CHV 560 Winthrop Street LP leased the apartment to Mr. Jimenez as part of a CAMBA-run supportive housing program.

52.    Upon information and belief, Mr. Jimenez moved into his apartment at 560 Winthrop Avenue approximately six years ago from shelter. He had been living in the shelter for approximately a year. Mr. Jimenez is physically and mentally disabled. He suffers from Manic-

---

[3] A recent report by NYC Comptroller Brad Lander found that in fiscal year 2024, only 42 percent of tenants were represented by counsel in Housing Court cases. https://comptroller.nyc.gov/wp-content/uploads/documents/Evictions-Up-Representation-Down.pdf  The rate of representation for CAMBA's residents in the surveyed buildings was 15 percent.

Depressive Bipolar disorder. He has trouble walking on his own due to his hip and uses a walker. Mr. Jimenez was involuntarily hospitalized more than 15 times prior to his diagnosis of Manic-Depressive Bipolar disorder in 2007. This is Mr. Jimenez's first supportive housing apartment and first apartment where his name is on the lease. Mr. Jimenez's income is Supplemental S Income (SSI) and SNAP benefits. Mr. Jimenez is a Section 8 recipient, and his share of the rent is $206.

53.    Mr. Jimenez has received few case management services since he moved into his apartment. His case manager comes to his apartment twice a month to check that he is receiving his medication. He has had two case managers in his time in CAMBA supportive housing. The last one was his case manager for six months, but currently Mr. Jimenez has no case manager.

54.    On April 8, 2025, CHV 560 Winthrop Street LP, a CAMBA entity, filed a nonpayment case in Kings County Housing Court against Mr. Jimenez under Index Number LT-310886/25. Upon information and belief, the basis of which is an affidavit of service filed in the above-mentioned Kings County Housing proceeding, the CAMBA entity bringing the eviction case alleged that it posted a Rent Demand Notice on the door to Mr. Jimenez's apartment on February 28, 2025. That rent demand, dated February 21, 2025, alleged that Mr. Jimenez owed rent arrears in the monthly amount of $181 for October 2024 through February 2025 for a total amount of $905.

55.    Upon information and belief, the basis of which is an affidavit of service filed in the above-mentioned Kings County Housing Court proceeding, the CAMBA entity bringing the eviction case alleges that it posted a Notice of Petition and Petition on the door to Mr. Jimenez's apartment on April 18, 2025. The Petition, dated April 7, 2025, alleged that Mr. Jimenez owed

rent arrears in the monthly amount of $181 for October 2024 through February 2025 for a total amount of $905.

56.     The Petition states that Mr. Jimenez's building is regulated by various City and State agency regulatory agreements but fails to state any information that would alert the court that Mr. Jimenez is a disabled supportive housing tenant who might need a guardian or other accommodations.

57.     On May 15, 2025, after no answer was filed by Mr. Jimenez, the office of Rosenblum & Bianco LLP filed an application for a default judgment and warrant on behalf of CHV 560 Winthrop Street LP. The application includes an affidavit by Jamal Coull, the assistant property manager for Mr. Jimenez's building, which alleges that $1,448.00 was owed in arrears, but fails to mention Mr. Jimenez's disability status or his possible need for a guardian ad litem.

58.     Mr. Jimenez first learned about the nonpayment case after receiving a letter from Plaintiffs' counsel. He then received a notice of eviction served by Marshal Darlene Barone on July 28, 2025. Mr. Jimenez filed an Order to Show Cause on July 28, 2025, seeking an order vacating his default judgment and permitting the filing of an answer. The Order to Show Cause has been adjourned until October 9, 2025.

59.     Mr. Jimenez's case managers never mentioned this proceeding to him. He had asked his case manager about paying rent and was told that the previous one-shot deal had paid what was owed. Prior to this apartment, Mr. Jimenez had never had a rental obligation. This is his first apartment as a lease holder. CAMBA did not provide Mr. Jimenez with any reasonable accommodations based on his disability prior to commencing an eviction proceeding. Had CAMBA done so, there would have been no need to put him at risk of eviction and potential homelessness.

60.     Since receiving the notice of eviction, Mr. Jimenez cannot sleep. He is frightened that he will lose his home. Mr. Jimenez is afraid of going back into shelter where younger men stole his belongings. He fears that he will lose his home and will then have to sleep on a bench with a shopping cart.

Barbra Martinez

61.     Barbra Martinez resides at 494 Georgia Avenue, Apt 4F, Brooklyn, NY 11207. Upon information and belief, 494 Georgia Avenue, Apt 4F, Brooklyn, NY 11207 is an apartment rented by CAMBA Inc. and subleased to Ms. Martinez as part of a CAMBA run supportive housing program.

62.     Upon information and belief, Ms. Martinez moved into her apartment at 494 Georgia Avenue approximately 8 years ago from a homeless shelter. Prior to moving into her current apartment, Ms. Martinez had been living in shelter for approximately two years. Ms. Martinez is physically and mentally disabled. She suffers from severe depression, anxiety, panic attacks, and insomnia. She also suffers physically from arthritis and previously had hip replacement. Her only income is Supplemental Security Income (SSI) and SNAP benefits. Her monthly tenant share of the rent is approximately $209.20.

63.     Ms. Martinez has received only sporadic counseling services from CAMBA since moving into the apartment. Her case manager calls her and checks in on her. She has had the same case manager for a few years.

64.     On May 30, 2025, CAMBA Inc. filed a nonpayment proceeding in Kings County Housing Court against Ms. Martinez under the index number LT-315610-25/KI. Upon information and belief, the basis of which is an affidavit of service filed in that proceeding, CAMBA alleges to have posted a fourteen-day Rent Demand Notice on the door to Ms.

Martinez's apartment on 4/29/25. That rent demand, dated April 24, 2025, alleged that Ms. Martinez owed rent arrears in the monthly amount of $209.20 for each of the months from and including June 2023 through and including April 2025 for a total amount alleged of $4,811.60.

65.     Upon information and belief, the basis of which is an affidavit of service filed in the above-mentioned Kings County Housing Court proceeding, CAMBA alleges to have posted a Notice of Petition and Petition on the door to Ms. Martinez's apartment on 6/10/25. The Petition, dated May 28, 2025, alleged that Ms. Martinez owed rent arrears in the monthly amount of $209.20 for each of the months from and including June 2023 through and including April 2025 for a total amount alleged of $4,811.60. The Petition states that the premises are rented by a not-for-profit entity and subject to a regulatory agreement with the NYC Department of Mental Health and Hygiene but otherwise provides no information regarding Ms. Martinez's potential need for a guardian or other accommodations.

66.     After no answer was filed by Ms. Martinez, the office of NYC Marshal David Smith filed a warrant requisition on July 18, 2025, on behalf of CAMBA. The warrant requisition includes an "affidavit of merit" by CAMBA employee Elizabeth Adesuwa which attests that Ms. Martinez owes $4,811.60 in rent arrears but fails to provide any information about Ms. Martinez's disabilities or her possible need for a guardian or other accommodations.

67.     Ms. Martinez first learned about the nonpayment case after receiving a letter from Plaintiffs' counsel. Otherwise, Ms. Martinez had no knowledge of the case filed against her or that she owed unpaid rent. Ms. Martinez's case managers never mentioned that she owed rent or that an eviction proceeding was filed against her, and she never received any rent demand or petition or notice of petition.

68.     Because of the eviction proceeding filed against her, Ms. Martinez's chronic health conditions were immediately exacerbated. The entire ordeal has caused her great stress and anxiety, and she is plagued by anxiety attacks. As a result, she is unable to sleep at night. She was made frightened and anxious about the prospect of becoming homeless again.

<u>Edmund Skinner</u>

69.     Edmund Skinner resides at 494 Georgia Avenue, Apt 3L, Brooklyn, NY 11207. Upon information and belief, 494 Georgia Avenue, Apt 3L, Brooklyn, NY 11207 is an apartment rented by CAMBA Inc. and subleased to Mr. Skinner as part of a CAMBA-run supportive housing program.

70.     Upon information and belief, Mr. Skinner moved into his apartment at 494 Georgia Avenue approximately 9 years ago from homeless shelter. Mr. Skinner is physically and mentally disabled. He suffers from bipolar disorder and depression. He also suffers physically from a lack of sight in one eye, Chronic Obstructive Pulmonary Disease, and leg swelling. Mr. Skinner has a history of homelessness and has had two periods of homelessness totaling 4 years prior to moving into his current apartment. His only income is Social Security Disability (SSD) and SNAP benefits. His current monthly share of the rent is approximately $290.00.

71.     Mr. Skinner has received sporadic counseling services from CAMBA since moving into the apartment. He sits down with his case manager every few months for approximately ten minutes to report how he is doing and whether he is taking his medication. He has had his current case manager for approximately two years.

72.     On June 5, 2025, CAMBA INC filed a nonpayment proceeding in Kings County Housing Court against Mr. Skinner under the index number LT-316134-25/KI. Upon information and belief, the basis of which is an affidavit of service filed in that proceeding,

CAMBA alleges to have posted a fourteen-day Rent Demand Notice on the door to Mr. Skinner's apartment on May 8, 2025. That rent demand, dated May 1, 2025, alleged that Mr. Skinner owed rent arrears in the monthly amount of $315.10 for each of the months from and including June 2023 through and including April 2025 for a total amount alleged of $6,617.10.

73.    Upon information and belief, the basis of which is an affidavit of service filed in the above-mentioned Kings County Housing Court proceeding, CAMBA alleges that it posted a Notice of Petition and Petition on the door to Mr. Skinner's apartment on June 17, 2025. The Petition, dated May 23, 2025, alleged that Mr. Skinner owed rent arrears in the monthly amount of $315.10 for each of the months from and including June 2023 through and including April 2025 for a total amount alleged of $6,617.10. The Petition states that the premises are rented by a not-for-profit entity and subject to a regulatory agreement with the NYC Department of Mental Health and Hygiene but otherwise provides no information regarding Mr. Skinner's potential need for a guardian or other accommodations.

74.    After no answer was filed by Mr. Skinner, the office of NYC Marshal David Smith filed a warrant requisition on June 18, 2025, on behalf of CAMBA. The warrant requisition includes an "affidavit of merit" by CAMBA employee Elizabeth Adesuwa which attests that Mr. Skinner owes $6,617.10 in rent arrears but fails to provide any information about Mr. Skinner's disabilities or her possible need for a guardian or other accommodations.

75.    Mr. Skinner first learned about the nonpayment case after receiving a letter from Plaintiffs' counsel about the nonpayment case. Otherwise, Mr. Skinner had no knowledge of the case filed against him or that he owed unpaid rent. Mr. Skinner's case manager never mentioned that he owed rent or that an eviction proceeding was filed against him, and he never received any rent demand or petition or notice of petition.

76.    Mr. Skinner's chronic health conditions were immediately exacerbated, and he was made frightened and anxious about the prospect of becoming homeless again.

## ALLEGATIONS CONCERNING THE PROPOSED CLASS

77.    Plaintiffs bring this action on behalf of a class defined as: All residents of CAMBA supportive housing programs, who are currently in rental arrears or have been sued in nonpayment eviction proceedings since January 1, 2024, or who may in the future fall into rental arrears or be sued in nonpayment eviction proceedings.

78.    This class is so numerous that joinder of all members is impracticable. There are over 100 members of the proposed class who face pending eviction proceedings in just nine of CAMBA's forty supportive housing buildings. See Paragraph 38 *supra*.

79.    There are questions of fact and law common to the class: whether Defendants are discriminating against the residents of its supportive housing facilities by, inter alia, failing to assist them in applying for social services grants to pay their arrears before seeking to evict them, failing to advise the court in the eviction petition that the tenant is a disabled supportive housing resident; seeking default judgments without advising the court that the tenant is disabled and may need the assistance of a guardian; and failing to assist tenants who do appear in court with social services applications.

80.    The individual plaintiffs' claims are typical of the claims of the class in that all of the named plaintiff class representatives have been sued by CAMBA for nonpayment of rent, none have received adequate assistance from CAMBA in obtaining rent arrears from social services, and all are currently at risk of eviction: three are subject to default judgments, and one is subject to a judgment entered after she signed a court stipulation.

81.     Declaratory and injunctive relief are appropriate with respect to the class as a whole because defendant has acted on grounds applicable to the class.

82.     The named plaintiffs and the proposed class are represented by The Legal Aid Society, whose attorneys are experienced in class action litigation and will adequately represent the class.

83.     A class action is superior to other available methods for a fair and efficient adjudication of this matter in that the prosecution of separate actions by individual class members would unduly burden the Court and create the possibility of conflicting decisions.

## CLAIMS FOR RELIEF

### FIRST CLAIM:

### Disability Discrimination Under the Fair Housing Act

84.     Plaintiffs repeat and reallege the allegations in the foregoing paragraphs as if fully set forth herein.

85.     Defendants proceed directly to eviction proceedings against its disabled residents in Housing Court without providing accommodations for its residents' disabilities. Before commencing eviction proceedings, CAMBA fails to provide appropriate supportive housing services that would ensure that commencing an eviction case in Housing Court was the last resort. At the eviction stage, CAMBA fails to alert the Housing Court of its status as a non-for-profit funded to serve the mentally disabled. CAMBA also readily takes default judgments against residents who do not appear on a Housing Court date with full knowledge that the defaulting tenant suffers from mental disabilities, and without alerting the Housing Court to this

fact. Defendants' failure to provide a reasonable modification of its practices and procedures to afford Plaintiffs an equal opportunity to use and enjoy their dwellings constitutes discrimination against Plaintiffs in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith because of a handicap of that person. See, 42 U.S.C. §§ 3604(f)(2)(A), 3604(f)(3)(b).

86.    Plaintiffs are aggrieved persons as defined in 42 U.S.C. § 3602(i), have been injured by defendants' unlawful, intentional, and willful discriminatory conduct, and have suffered damages as a result.

87.    Accordingly, pursuant to 42 U.S.C. §§ 3613 (a) and (c), Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys ' fees and costs.

## SECOND CLAIM:

### New York State Human Rights Law

88.    Plaintiffs repeat and reallege the allegations in the foregoing paragraphs as if fully set forth herein.

89.    Defendants' conduct as set forth above constitutes discrimination because of disability in the terms, conditions, or privileges of the rental of a housing accommodation or in the furnishing of facilities or services in connection therewith, in violation of the New York Executive Law § 296(5)(a)(2).

90.    Plaintiffs have been injured by Defendants' discriminatory conduct and have suffered damages as a result.

91.    Defendants' conduct was intentional, willful, and undertaken in disregard for the rights of others.

92.     Accordingly, pursuant to Article 15 of the New York Executive Law § 297, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

## THIRD CLAIM:

## New York City Human Rights Law

93.     Plaintiffs repeat and reallege the allegations in the foregoing paragraphs as if fully set forth herein.

94.     Defendants' conduct as set forth above constitutes a refusal to rent or lease or other withholding of a housing accommodation because of disability, in violation of New York City Administrative Code § 8-107(5)(a)(l)(a), Defendants' conduct as set forth above constitutes discrimination because of Plaintiffs' disabilities with respect to the terms, conditions, or privileges of the rental or lease of a housing accommodation, in violation of New York City Administrative Code §§ 8-107(5)(a)(1)(b).

95.     Plaintiffs have been injured by Defendants' discriminatory conduct and have suffered damages as a result.

96.     Defendants' conduct was intentional, willful, and undertaken in disregard for the rights of others.

97.     Accordingly, pursuant to New York City Administrative Code §§ 8-502(a) and 8-502(f), Plaintiffs are entitled to actual damages, punitive damages, injunctive relief and such other remedies as may be appropriate, and attorneys' fees and costs.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Court issue an order and judgment as follows:

1)      Declaring that Defendants' failure to reasonably accommodate Plaintiffs' disabilities violates:

a)  The Fair Housing Act 42 U.S.C. § 3604 et seq;

b)  The New York State Human Rights Law;

c)  The New York City Human Rights Law.

2)      Issuing a permanent injunction prohibiting Defendants from discriminating against Plaintiffs on the basis of their disability, including:

a)  requiring Defendants to institute procedures to protect and accommodate disabled tenants prior to commencing eviction proceedings in compliance with applicable law and regulations;

b)  requiring Defendants to alert the Housing Court judges to the fact that CAMBA tenants are disabled and may be in need of a guardian ad litem;

c)  Requiring Defendants to contact disabled tenants prior to seeking default judgments against them;

d)  requiring Defendants to plead the supportive housing status of building residents when commencing an eviction proceeding in Housing Court.

3)      Awarding Plaintiffs damages for the injuries and expenses incurred as a result of the preceding violations;

4)      Awarding attorneys' fees and court costs pursuant to 42 U.S.C. § 3613(c); and the New York City and New York State Human Rights Laws;

5)      Granting such further and other relief as this Court deems just and proper.


Dated: October 7, 2025

New York, New York

Respectfully submitted,


/s/ Edward Josephson
Judith Goldiner
Edward Josephson
Pavita Krishnaswamy
Ellen Davidson
Nicholas Berghall
The Legal Aid Society
49 Thomas Street, 5th Floor
New York, New York 10013
(212) 298-5221
ejosephson@legal-aid.org

*Attorneys for Plaintiffs*